399 A.2d 1077

**COMMONWEALTH of Pennsylvania**

v.

**Lynn H. POSSINGER, Appellant.**

Superior Court of Pennsylvania.

Submitted June 12, 1978.

Decided March 16, 1979.

334

Louis Lipschitz, Philadelphia, for appellant.

Robert B. Lawler, Assistant District Attorney Chief, Appeals Division, Philadelphia, for Commonwealth, appellee.

Before JACOBS, President Judge, and HOFFMAN, CERCONE, PRICE, VAN der VOORT, SPAETH and HESTER, JJ.

SPAETH, Judge:

Following a non-jury trial, appellant, a physician, was convicted on seven counts of feloniously dispensing a controlled substance.[1] The evidence viewed in the light most favorable to the Commonwealth establishes the following facts.

*COUNT I.* On June 9, 1975, Robert Bongard, an undercover agent for the Philadelphia Police Department who weighs 160 pounds and is 6 feet 1 inch tall, went to appellant's office. After paying $8.00, appellant's usual fee for an office visit, Bongard told appellant that he wanted to go on a diet and asked for a prescription. After taking Bongard's blood pressure, appellant asked him whether he had any allergies and which type of drug he preferred. At first Bongard stated that he had no drug preference, but after appellant repeated his question, Bongard said he wanted dexedrine, a controlled substance. Appellant then told Bongard that dexedrine came in three different doses—5, 10, and 15 milligram—and that he should choose one. When

1. *See* 35 P.S. § 780–113(a)(14) (1977).

Bongard again stated no preference, appellant said he would give him "tens" and that if they were not strong enough, he would give him something stronger. Appellant then wrote a prescription for 30 dexedrine. During the visit, appellant asked no other questions concerning Bongard's medical history, nor did he give Bongard instructions concerning a diet.

COUNT II. Bongard returned to appellant's office on July 1, 1975. After he was weighed by appellant, Bongard asked if he could come back sooner on his next visit. After giving Bongard a prescription for 30 dexedrine, 15 milligram strength, appellant indicated that Bongard could return in 2½ weeks instead of 3 weeks. On this visit, which lasted only 2–3 minutes, appellant did not take a medical history, check Bongard's blood pressure, or recommend a diet regimen.

COUNT III. On July 24, 1975, Bongard returned to appellant's office and obtained another prescription for 30 dexedrine, 15 milligram strength. Appellant indicated that he would be on vacation during the first week in August and that Bongard could return in 2 weeks if he wished. Aside from taking Bongard's blood pressure and weighing him, no other medical tests were performed, nor was a medical history taken. This visit also lasted only 2–3 minutes.

COUNT IV. After Bongard returned for a fourth visit on August 14, 1975, and paid his $8.00 fee, he told appellant that he was not consuming the pills himself, but was selling some and giving others away to friends. In response, appellant told Bongard that "if it was a couple of years ago I could have probably done something for you but, like, things are tight now and, like, the Federal Government watches us . . .. [T]he best thing I can do, if you have some friends, get some friends to come in here. If they only come here once they could sign a card, a file card, and you could come back for them after that with just notes from them and I could give you the prescriptions for your friends." Reproduced Record at 81a. Appellant then wrote another prescription for 30 dexedrine, 15 milligram strength, and Bongard left.

COUNT V. On September 4, 1975, Bongard returned to appellant's office accompanied by Police Officers Raymond Stackhouse and Richard Jumper. Bongard obtained another prescription for 30 dexedrine, 15 milligram strength, and left. Jumper told appellant that he could stay awake no more than 2 hours in a 24 hour period. Appellant weighed Jumper, took his blood pressure, and asked him what he wanted. Jumper said desoxyn, a controlled substance, and appellant wrote out a prescription for 15 milligrams. Appellant took no other medical history and did not examine Jumper further. Besides asking for drugs for himself, Jumper told appellant that his girlfriend had come with him to see appellant, but that appellant's receptionist would not let her into the office because she was not carrying proper identification. Appellant asked why she had come, and Jumper said she wanted quaaludes, another controlled substance. Appellant then wrote a prescription for quaaludes in Jumper's name. Appellant also told Jumper that Bongard could pick up future prescriptions for him so long as he gave Bongard a note asking for them. Finally, appellant gave Stackhouse a prescription for desoxyn, after weighing him and taking his blood pressure.

COUNT VI. On September 18, 1975, Bongard returned to appellant's office, paid $24.00 to appellant's receptionist, and gave her two notes from Jumper and Stackhouse requesting prescriptions. The receptionist took the notes, went into an inner office, and then returned with four prescriptions. One prescription was made out to Jumper for desoxyn, 15 milligrams; another was made out to Jumper for 30 quaaludes; a third was made out to Stackhouse for desoxyn, 15 milligrams; and the fourth was made out to Bongard for 30 dexedrine, 15 milligram strength. All the prescriptions were signed by appellant. Bongard did not see appellant on this occasion.

COUNT VII. Bongard returned for the last time to appellant's office on October 6, 1975. He again presented notes from Jumper and Stackhouse requesting prescriptions, and after paying $24.00, received prescriptions identical to

those obtained on September 18. Again, on this visit Bongard did not see appellant.

Appellant's first argument is that the statute under which he was convicted is so vague that it failed to give him reasonable notice that his conduct was prohibited, and that therefore his convictions contravene his rights to due process under the fourteenth amendment to the United States Constitution.[2] Appellant was convicted under 35 Pa.C.S. § 780–113(a)(14), which prohibits:

> [t]he administration, dispensing, delivery, gift or prescription of any controlled substance by any practitioner or professional assistant under the practitioner's direction or supervision unless done (i) in good faith in the course of his professional practice; (ii) within the scope of the patient relationship; (iii) in accordance with treatment principles accepted by a responsible segment of the medical profession.

The manifest purpose of this statute is to limit the dispensing of drugs by a physician to the bounds of his professional practice, and to prevent drug-pushing by doctors. That the first two subdivisions of this statute meet the requirements of due process should not be doubted. Congress has passed provisions similar to section 780–113(a)(14), *see* 21 U.S.C. §§ 802(20), 829(a), (b), and 841(a)(1) (1972), which federal courts have repeatedly upheld under attacks based on the fourteenth amendment. In *United States v. Jobe,* 487 F.2d 268 (10th Cir. 1973), *cert. denied,* 416 U.S. 955, 94 S.Ct. 1968, 40 L.Ed.2d 305 (1974), a physician, under facts almost identical to the facts here, was convicted under the federal stat-

---

**2.** Since appellant argues that section 780–113(a)(14) is unconstitutional on its face because it contains no standard distinguishing illegal from legal conduct, we will first examine the statute without regard to appellant's actions. *See, e. g., Commonwealth v. Mack,* 467 Pa. 613, 616, 359 A.2d 770, 772 (1976) (Only "[i]f the statute contains no standard of conduct [to distinguish between illegal and legal acts], or if the standard of conduct prohibits conduct which is protected by the first amendment, [will] the statute . . . be declared unconstitutionally 'vague' without regard to the particular conduct of the individual challenging the statute . . . ."). Following this examination, we will discuss whether the statute can be applied, constitutionally, to appellant's conduct.

utes. On appeal, the court held that the conviction was valid, and that the defendant's due process rights were not violated because the federal statutes proscribed the prescription of controlled substances unless for "a legitimate medical purpose" and "in the usual course of [the doctor's] professional practice." *United States v. Jobe, supra* at 269. *See also United States v. Collier,* 478 F.2d 268 (5th Cir. 1973); *United States v. Rosenberg,* 515 F.2d 190 (9th Cir.), *cert. denied,* 423 U.S. 1031, 96 S.Ct. 562, 46 L.Ed.2d 404 (1975); Annot., 33 A.L.R. (Fed.) 220, 233–34 (1977) (the term "in the course of professional practice" is not vague because it has been subject to frequent judicial construction). Nor is the constitutionality of section 780–113(a)(14) undermined by the third subsection requiring that the dispensing of controlled substances be "in accordance with treatment principles accepted by a responsible segment of the medical profession." In *Commonwealth v. Stoffan,* 228 Pa.Super. 127, 323 A.2d 318 (1974), we held that this clause, which was then contained in another part of the Controlled Substance, Drug, Device and Cosmetic Act, was specific enough to provide a standard of conduct to which physicians could be held legally accountable. The fact that in 1974 the Act was amended to incorporate this clause into section 780–113(a)(14) did not render it any less specific.

Appellant argues next that even if section 780–113(a)(14) is definite enough to proscribe some forms of medical conduct, it was nevertheless too vague to give him reasonable notice that his conduct in this case was illegal. The Commonwealth's evidence established that appellant 1) permitted Bongard, Stackhouse, and Jumper to accumulate excessive quantities of controlled substances; 2) prescribed drugs to Bongard after being informed that Bongard was not using them himself but was selling them; and 3) prescribed drugs for a non-existent person—to wit, Jumper's alleged girlfriend. The evidence also established that appellant prescribed drugs without obtaining medical histories from the Commonwealth witnesses or performing medically necessary physical examinations. Expert testimony established

that prior to prescribing dexedrine or desoxyn, a physician should elicit information from the patient concerning possible thyroid and cardiac conditions, and that the patient's blood pressure, heartbeat, and pulse should be taken. It was also established that the drug quaalude was an addictive sedative, and that before prescribing it, a physician should examine the patient's lungs to check for respiratory problems. We think that section 780–113(a)(14) gave appellant reasonable notice that his actions did not meet the law's requirements. We recognize, as did the court in *United States v. Collier, supra* at 272, that

> [i]n making a medical judgment concerning the right treatment for an individual patient, physicians require a certain latitude of available options. [Citations omitted.] Hence, "[w]hat constitutes *bona fide* medical practice must be determined upon consideration of evidence and attending circumstances." [Citations omitted.]

Still, a statute affecting medical practice will not be deemed unconstitutionally vague because it "need not delineate the precise circumstances constituting the bounds of permissible practice . . . ." *Id.* Even though doubts as to the applicability of section 780–113(a)(14) in marginal fact situations may be conceived, in more doubtful cases than the one presented here courts have affirmed convictions recognizing that " 'the law is full of instances where a man's fate depends on his estimating rightly, that is, as the jury subsequently estimates it, some matter of degree.' " *Commonwealth v. Heinbaugh,* 467 Pa. 1, 7, 354 A.2d 244, 247 (1976), *citing United States v. Powell,* 423 U.S. 87, 93, 96 S.Ct. 316, 46 L.Ed.2d 228 (1975). *See also Commonwealth v. Hughes,* 468 Pa. 502, 364 A.2d 306 (1976).[3]

**3.** We also believe that appellant's argument that section 780–113(a)(14) constitutes a delegation of legislative power that is prohibited under Article II, section 1, of the Pennsylvania Constitution is without merit. In *Wm. Penn Parking Garage, Inc. v. City of Pittsburgh,* 464 Pa. 168, 212, 346 A.2d 269, 291 (1975), the Court stated:

> The prohibition against delegation of legislative power "requires that the basic policy choices involved in 'legislative power' actually be made by the Legislature as constitutionally mandated". . .
> This doctrine serves two interrelated purposes. First, it seeks to

■ For similar reasons, appellant's claim that the Commonwealth's proof was insufficient to sustain his convictions must be rejected. As an initial matter, appellant misconstrues the Commonwealth's burden in this case. Appellant asserts that the Commonwealth had to prove that his prescriptions were written 1) without good faith in the course of his professional practice, 2) outside the scope of a patient relationship, and 3) not in accordance with treatment principles accepted by a responsible segment of the medical profession. Section 780–113(a)(14), however, prohibits prescriptions of controlled substances by physicians unless the three subsections of the statute are met. Thus, if the Commonwealth proves the absence of one or more of these conditions, a physician is guilty under the statute.[4] Without question appellant's conduct on and after August 14 violated the statute. On August 14, appellant knew that Bongard was selling the drugs prescribed to him, yet he continued to write additional prescriptions for him. In addition, appel-

insure that "basic policy choices" be made by duly authorized and politically responsible officials. . . . Second, it seeks to protect against the arbitrary exercise of unnecessary and uncontrolled discretionary power. [Citations omitted.]

We do not believe that section 780–113(a)(14) violates either of these purposes, which we note, are related to the purposes served by the due process clause of the fourteenth amendment.

4. We also reject appellant's contention that he was prejudiced by any misunderstanding the trial judge may have had concerning the Commonwealth's burden of proof. In denying appellant's motions for a new trial and arrest of judgment, the trial judge stated:

In the instant case it was the burden of the Commonwealth to prove each of the following elements beyond a reasonable doubt: a) the prescription, b) of a controlled substance, c) by a practitioner, d) not within a ligitimate [sic] doctor-patient relationship, e) not in good faith and f) not in accordance with treatment principles accepted by a responsible segment of the medical profession. Slip opinion of the lower court at 11.

Appellant's assertion is a semantic quibble that because the statute does not state that the doctor-patient relationship has to be "legitimate," the trial judge changed an element of the offense. It is pertinent to note that by saying that the prescription had to be made within the scope of a legitimate patient relationship, the trial judge was evidently combining the statutory requirements that the prescription be made not only within the scope of any patient relationship, but also "in the course of [the physician's] professional practice."

lant prescribed drugs to Jumper and Stackhouse solely on the basis of notes they gave to Bongard, and prescribed drugs for Jumper's non-existent girlfriend, whom, of course, appellant never saw. The evidence also showed that prior to August 14, appellant conducted only perfunctory examinations of Bongard before writing prescriptions for him. The Commonwealth presented expert testimony to establish that these examinations were not in accordance with treatment principles recognized by the medical community. In addition, appellant's conduct after August 14 when added to the other facts of this case showed that the prescriptions he wrote prior to that date were not made in good faith in the course of his professional practice.

Appellant argues next that he is entitled to discharge or a new trial because he was denied effective assistance of trial counsel. To support this claim, appellant makes the following assertions: 1) Counsel failed to argue that appellant's acts under each count had to be considered separately from his acts under the other counts, and that the fact that his acts under some of the counts were illegal could not be considered in determining his guilt on the other counts; 2) counsel did not object to the Commonwealth's failure to list Stackhouse as a witness on the informations; 3) counsel did not move to quash the informations on the ground that they failed to identify the person for whom the prescriptions were written; and 4) counsel failed to request a bill of particulars. Claims of ineffective assistance of counsel are, of course, cognizable on direct appeal. *Commonwealth v. Dancer,* 460 Pa. 95, 331 A.2d 435 (1975); *Commonwealth v. Twiggs,* 460 Pa. 105, 331 A.2d 440 (1975). However, counsel's assistance will not be deemed ineffective if

> we are able to conclude that the particular course chosen by counsel had *some reasonable basis* designed to effectuate his client's interests. The test is *not* whether other alternatives were more reasonable, employing a hindsight evaluation of the record. Although weigh the alternatives we must, the balance tips in favor of a finding of effective assistance as soon as it is determined that counsel's decisions had any reasonable basis.

*Commonwealth ex rel. Washington v. Maroney,* 427 Pa.
599, 604–05, 235 A.2d 349, 352 (1967).

▮ Appellant's first assertion of ineffectiveness is with-
out merit. It is well settled that evidence of prior or
subsequent crimes by a defendant is admissible when those
crimes tend to prove:

> (1) motive; (2) intent; (3) absence of mistake or accident;
> (4) a common scheme, plan or design embracing commis-
> sion of two or more crimes so related to each other that
> proof of one tends to prove the others; or (5) to establish
> the identity of the person charged with the commission of
> the crime on trial—in other words, where there is such a
> logical connection between the crimes that proof of one
> will naturally tend to show that the accused is the person
> who committed the other.

> *Commonwealth v. Peterson,* 453 Pa. 187, 197–98, 307 A.2d
> 264, 269 (1973) (plurality opinion).

*See also Commonwealth v. Wable,* 382 Pa. 80, 114 A.2d 334
(1955). In prosecutions analogous to the one here, courts
have allowed evidence of other related criminal conduct to
prove the defendant's guilt of the crime being tried. *See, e.
g., United States v. Rosenfield,* 469 F.2d 598 (3d Cir. 1972)
(per curiam), *cert. denied,* 411 U.S. 932, 93 S.Ct. 1899, 36
L.Ed.2d 391 (1973) (in prosecution for wilful failure to file
tax returns evidence of other tax evasion is relevant on the
issue of defendant's willfulness); *United States v. Miah,* 433
F.Supp. 259 (E.D.Pa.1977), *aff'd,* 571 F.2d 573 (3d Cir. 1978)
(testimony relating to drug transactions and conversations
occurring on dates other than those alleged in the indict-
ment allowable on the issues of identity, knowledge, intent,
motive, and common scheme). We have already held that
appellant's actions after August 14 were probative on the
issue of whether the earlier prescriptions were written in
good faith in the course of appellant's professional practice.
Thus, appellant's trial counsel was not ineffective for failing
to argue that each of appellant's actions had to be con-
sidered in isolation from his other actions.

Nor was appellant's trial counsel ineffective for failing to request a bill of particulars. "The purpose of a bill of particulars is to give notice to the accused of the offenses charged in the bill of indictment so that he may prepare a defense, avoid surprise, or intelligently raise pleas of double jeopardy and the bar of statute of limitations." *Commonwealth v. Bartman,* 240 Pa.Super. 495, 507, 367 A.2d 1121, 1127 (1976) (citations omitted). *See also Commonwealth v. Simione,* 447 Pa. 473, 477, 291 A.2d 764, 766 (1972). In the present case, appellant had been tried and convicted in the Municipal Court of Philadelphia prior to his conviction in the Court of Common Pleas on the same charges.[5] By virtue of appellant's first trial, he acquired all the information that would have been contained in a bill of particulars, plus more, prior to his trial in the court below. Appellant has failed to assert how he was prejudiced by his counsel's failure to request a bill of particulars, and we are unable to perceive any prejudice.

Nor was counsel ineffective for failing to object to alleged defects in the informations. Appellant does not argue that the informations failed to meet the requirements of Pa.R. Crim.P. 225, which prescribes the contents of an information. A court would not have quashed the informations merely because at trial the Commonwealth introduced the testimony of Richard Stackhouse, who was not listed on the informations as a Commonwealth witness. *Cf. Commonwealth v. Pope,* 455 Pa. 384, 391, 317 A.2d 887, 890 (1974) ("It is well settled that a purported variance [between an indictment and the Commonwealth's proof at trial] will not be deemed

5. *See* 17 P.S. § 711.18 (Supp. 1978–79) which provides in part:
   The municipal court shall have jurisdiction in all criminal offenses for which no prison term may be imposed or which are punishable by imprisonment for a term of not more than five years, including indictable offenses under the motor vehicle laws. In these cases, the defendant shall have no right of trial by jury in the municipal court, but shall have the right of appeal for trial de novo including the right of trial by jury to the trial division of the court of common pleas.
   Following his conviction in Municipal Court, appellant exercised his right under this statute to a trial de novo in the Court of Common Pleas.

fatal unless it could mislead the defendant at trial, involves an element of surprise prejudicial to the defendant's efforts to prepare his defense, precludes the defendant from anticipating the prosecution's proof, or impairs a substantial right.") (footnotes omitted); *Commonwealth v. Emmel,* 194 Pa.Super. 441, 168 A.2d 609 (1961) (judgment will not be reversed where defendant does not argue prejudice but only that the Commonwealth introduced testimony by witnesses whose names were not listed on the indictment); Pa.R. Crim.P. 216.

■ Appellant argues next that the lower court erroneously allowed testimony by Joseph Azeff, an agent for the State Bureau of Drug & Narcotics Control, on the issue of whether the prescriptions appellant wrote to Bongard, Jumper, and Stackhouse were valid. Appellant argues that Azeff was not qualified to give expert testimony on the validity of the prescriptions, and that in any event, the validity of the prescriptions was not an issue of fact subject to expert testimony, but was an issue of law for the trial judge to decide. Given that appellant concedes that the trial judge had the power to find that the prescriptions were valid, and that such a finding would have been correct, it is impossible to see how appellant was prejudiced by Azeff's testimony, even assuming that its admission was erroneous. Any error pertaining to this testimony, therefore, was harmless beyond a reasonable doubt. *See Commonwealth v. Story,* 476 Pa. 391, 383 A.2d 155 (1978).

■ Appellant's final argument is that he was denied due process and subjected to double jeopardy when he received a stiffer sentence following his trial in the Court of Common Pleas than the sentence he received following his trial in Municipal Court. In Municipal Court, appellant received a fine of $500; following his trial de novo in the Court of Common Pleas, appellant was sentenced to two concurrent terms of six to twenty-three months imprisonment and fined $10,000. In *Commonwealth v. Moore,* 226 Pa.Super. 58, 312 A.2d 422 (1973), a majority of this court held that a defendant's constitutional rights were not violated when a Common

Pleas Court following a trial de novo imposed a sentence greater than the one originally imposed by the Municipal Court. This was true even though the Common Pleas Court did not place upon the record facts justifying such an increase in sentence.

Accordingly, appellant's judgment of sentence is affirmed.[6]

JACOBS, former President Judge, and HOFFMAN, J., did not participate in the consideration or decision in this case.

6. Although the majority affirms appellant's judgment of sentence, the author of this opinion wishes to note that he would have vacated the sentence and remanded the case for resentencing by the lower court. Appellant claimed that the lower court did not state reasons in support of its sentence. The official record transmitted to us did not contain transcripts of the sentencing or resentencing hearings held by the lower court, nor a copy of a presentence report. Nor did the opinion filed by the lower court pursuant to Pa.R.A.P. 1925 contain a statement of reasons in support of its sentence. Because the deficient state of the record precludes meaningful appellate review of the lower court's sentence, I believe that remand for resentencing is necessary. See Commonwealth v. Bolyard, 256 Pa. Super. 57, 389 A.2d 598 (1978).