Commonwealth of Pennsylvania, Department of Health, by its Secretary, Gordon K. MacLeod, M.D., Plaintiff *v.* Peter T. DeMarco, M.D., Defendant. S.O.S. Association, Inc., Intervenor.

Argued June 2, 1980, before Judges MENCER, ROGERS and BLATT, sitting as a panel of three.

*John G. Knorr, III,* Deputy Attorney General, with him *Arthur T. McDermott,* Assistant Attorney General, *Allen C. Warshaw,* Deputy Attorney General, and *Harvey Bartle, III,* Acting Attorney General, for Plaintiff.

*Harry Lore,* with him *Nicholas Kozay, Jr.,* and *F. Emmett Fitzpatrick,* for Defendant.

*Joseph J. Carlin,* for intervenor.

PER CURIAM OPINION:

Defendant, Peter T. DeMarco, M.D. and intervenor S.O.S. Association, Inc. have filed exceptions to findings of fact, failure to make findings, conclusions and the decree nisi of the Chancellor, Judge ROGERS, entered January 31, 1980. The decree nisi order enjoined Dr. DeMarco from administering the drug Procaine-PVP to humans.

### EXCEPTIONS TO FINDINGS

Both DeMarco and S.O.S. have excepted to finding of fact 12 as being unsupported by the evidence. We found that

12) [a]ccepted practice in the medical profession in the United States with respect to the

use by physicians of drugs in the treatment of patients is to confine such use to drugs which have been shown to be safe and efficacious by tests and trials consisting of:

(1) Tests of the drug in animals for toxicity.

(2) Tests of the drug for clinical toxicity —that is, on humans.

(3) Uncontrolled trials of the drug on human beings to ascertain whether there are beneficial effects.

(4) Double blind controlled trials to prove that there is beneficial effect.

The satisfactory passage of these tests for safety and trials for efficacy is also the basis for FDA approval.

This finding is supported by the testimony of Frances K. O. Kelsey, Ph.D., M.D., Robert F. Zelis, M.D., John Burnside, M.D. and Elliot S. Vessell, M.D., all of whom are highly qualified physicians with specialties in the relevant disciplines of pharmacology, cardiology and internal medicine.

S.O.S. excepts to the following portion of finding of fact 13 as unsupported by the evidence: "No trials of Procaine-PVP, or double blind controlled trials have ever been carried out. There is, therefore, no evidence of any test or trial suggesting that the drug is effective for any of the purposes for which Dr. DeMarco uses it." The testimony of Drs. Zelis, Burnside and Vessell support this finding. Dr. DeMarco admitted that he had not conducted double blind studies.

S.O.S. excepts to finding of fact 15 as being self-contradictory and unsupported by the evidence. The portion to which S.O.S. excepts as being unsupported by evidence is as follows:

> [Dr. DeMarco] is the only practitioner who administers Procaine-PVP as treatment for anything in the United States. This record includes no evidence that Procaine-PVP is used in the treatment of humans by any practitioner other than DeMarco anywhere. Dr. DeMarco is the only practitioner in the United States who claims that Procaine-PVP is beneficial in the treatment of disorders listed in finding of fact 10. . . .

This finding is supported by the testimony of Dr. Zelis, Chief of Cardiology and Professor of Medicine and Physiology at Hershey Medical Center, who testified that he knew of no cardiologist using Procaine or Procaine-PVP for the treatment of cardiovascular disease. Dr. Burnside, Chief of Internal Medicine and Associate Professor of Medicine at the Hershey Medical Center testified that he knew of no one in the United States other than DeMarco who used Procaine-PVP for the treatment of gangrene, arthritis, migraine, asthma, kidney disease. Furthermore, DeMarco himself testified that he knows of no one in the United States who uses Procaine-PVP for the treatment of any disease. Although the record contains references to the use of Procaine in Europe for treatment and, as we found, a substance containing Procaine-PVP and caffeine is marketed in Europe under the name Depot-Impletol, there was no evidence in this record that the substance Procaine-PVP, as distinguished from Procaine or Procaine combined with other drugs, is used in the treatment of humans by any practitioner anywhere other than Dr. DeMarco. There is no evidence that any practitioner in the United States other than DeMarco claims that Procaine-PVP is beneficial in the treatment of the many maladies listed in Finding 10. This is not incon-

sistent with the finding that four doctors believe that some persons with a few of the maladies on that list improved after receiving injections from DeMarco and that one doctor believes that Procaine-PVP is beneficial in the treatment of gangrene, ulcers, arthritis, poor circulation and angina pectoris.

S.O.S. excepts to finding of fact 17 as "superfluous and without probative value in this record." The finding was that "[t]hirty percent of sick people treated with placebos without their knowledge believe that their conditions are improved thereby." This fact supports the necessity for double blind testing to prove the efficacy of a drug and it tends to diminish the persuasiveness of testimony of the benefits of Procaine-PVP.

S.O.S. excepts to the Chancellor's failure to make thirteen findings listed in its brief. Eight of these suggested findings relate to general information concerning procaine, not Procaine-PVP, and lack significance to the issue of the case. Two have to do with the opinions of Dr. DeMarco's loyal patients concerning which the Chancellor made adequate findings. The three remaining are the direct subject of findings of the Chancellor.

### EXCEPTIONS RELATING TO THE LAW

Dr. DeMarco and S.O.S. contend that Section 11(d)(iii) of The Controlled Substance, Drug, Device, and Cosmetic Act, Act of April 14, 1972, P.L. 233, *as amended*, 35 P.S. §780-111(d)(iii), is unconstitutionally vague and is an unconstitutional delegation of authority by the Legislature. Section 11(d) provides:

> A practitioner may prescribe, administer, or dispense a controlled substance or other drug or device only (i) in good faith in the

course of his professional practice, (ii) within the scope of the patient relationship, and (iii) in accordance with treatment principles accepted by a responsible segment of the medical profession. A practitioner may cause a controlled substance, other drug or device or drug to be administered by a professional assistant under his direction and supervision.

The language of Section 11(d) is used in Section 13(a)(14) of the Act, 35 P.S. §780-113(a)(14), which makes it a criminal offense for a practitioner to administer, dispense, deliver, give or prescribe a controlled substance in a manner other than on the three same conditions. The Superior Court rejected the arguments made here and upheld the constitutionality of this criminal statute in *Commonwealth v. Possinger*, 264 Pa. Superior Ct. 332, 399 A.2d 1077 (1979). *See also Commonwealth v. West,*    Pa. Superior Ct.   ,   A.2d   (1979). We agree with the Superior Court that the language of Section 11(d) including that of Subsection (iii) is not unconstitutionally vague and that it does not involve an unconstitutional delegation of legislative power.

DeMarco makes two additional arguments on the law. He first says that he has been denied his civil right to prescribe and administer drugs according to his medical judgment as a licensed physician. He cites no authority for the proposition that a licensed physician has a right to treat patients wholly in accordance with his personal beliefs and we have found none. On the contrary, the state's power to regulate the practice of medicine in the interest of public health and safety is as clear as it is necessary. *Johnston v. State Board of Medical Education and Licensure,* 49 Pa. Commonwealth Ct. 9, 410 A.2d 103 (1980).

Finally, DeMarco argues for the first time that we lack jurisdiction because the Medical Practice Act of 1974, Act of July 20, 1974, P.L. 551, *as amended,* 63 P.S. §421.1 et seq., vests exclusive jurisdiction over the conduct of physicians in the State Board of Medical Education and Licensure and repeals the provisions of the Controlled Substance Act insofar as they apply to physicians. We disagree. Section 15 of the Medical Practice Act of 1974, 63 P.S. §421.15 gives the Board the authority to refuse, revoke, suspend or limit the license of a physician for the reasons listed therein. Section 18(b), 63P.S. §421.18(b), repeals "[a]ll other acts and parts of acts inconsistent herewith." It is significant that the Legislature did not retain the full text of the repealer provision of the old Medical Practice Act, Act of June 3, 1911, P.L. 639, §14, *as amended,* formerly 63 P.S. §412, which contained the above quoted language and added: "it being intended that this act shall furnish a complete and exclusive system in itself so far as relates to the right to practice medicine and surgery in the Commonwealth of Pennsylvania." It is clear that the Legislature did not intend the Medical Practice Act of 1974 to provide the exclusive means of regulating the medical profession but only that it take precedence over inconsistent provisions of other Acts. Section 11(d) of the Controlled Substance Act is not inconsistent with anything in the Medical Practice Act of 1974. Section 11(d) does not limit a physician's license to practice medicine; it merely prescribes the conditions under which drugs and devices may be used by a practitioner in his practice. Plainly, the Medical Practice Act of 1974 does not divest this Court of its jurisdiction under Section 25 of the Controlled Substance Act, 35 P.S. §780-125 to grant temporary or permanent injunctions restraining con-

8

tinued violations of that Act "irrespective of the existence of an adequate remedy at law."

Accordingly, we enter the following:

ORDER

AND Now, this 11th day of July, 1980, all of the exceptions of Dr. Peter T. DeMarco and of S.O.S. Association, Inc. are dismissed and the Prothonotary is directed to enter the Chancellor's decree nisi as a final decree of the Court in this matter.