J. A01009/15

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA    :        IN THE SUPERIOR COURT OF
                                    :              PENNSYLVANIA
                 v.               :
                                      :
VAN EDWARD SCOTT,             :          No. 1987 WDA 2013
                                      :
           Appellant      :

Appeal from the Judgment of Sentence, October 29, 2013,
in the Court of Common Pleas of Lawrence County
Criminal Division at No. CP-37-CR-0000255-2013

COMMONWEALTH OF PENNSYLVANIA    :        IN THE SUPERIOR COURT OF
                                      :              PENNSYLVANIA
                 v.               :
                                      :
VAN EDWARD SCOTT,             :          No. 1988 WDA 2013
                                      :
           Appellant      :

Appeal from the Judgment of Sentence, October 29, 2013,
in the Court of Common Pleas of Lawrence County
Criminal Division at No. CP-37-CR-0000516-2010

BEFORE: FORD ELLIOTT, P.J.E., DONOHUE AND ALLEN, JJ.

MEMORANDUM BY FORD ELLIOTT, P.J.E.:        **FILED APRIL 06, 2015**

     In these two consolidated appeals, appellant challenges the judgment of sentence imposed following his several convictions relating, in one part, to the improper prescribing of narcotic drugs, and in the other part, to

disposing of frozen or seized assets. Finding no merit in the issues on appeal, we affirm.

Appellant is a medical doctor who ostensibly engaged in a pain management practice. As a central part of that practice, appellant prescribed large dosages of narcotic opiate drugs to his patients. During appellant's trial, the Commonwealth presented testimony from some of appellant's patients who typically described office visits as lasting five minutes or less and consisting of a brief, perfunctory examination, followed by the prescribing of large dosages of controlled substances. (Notes of testimony, 6/12/13 at 179; 6/13/13 at 103, 171, 174.)

One of these patients, Kelly Tritt, testified that she agreed to help narcotics agents investigate appellant after she was arrested for selling some of the controlled substances she was prescribed to her ex-husband. (Notes of testimony, 6/13/13 at 181-183.) Thereafter, Tritt took a recording device with her when she had office visits with appellant. (*Id.* at 184.) Tritt also admitted that she fabricated accounts of injuries, presumably to induce appellant to augment her prescription. (*Id.* at 195-197.) While Tritt denied that the narcotics agents working with her made up the fabrications themselves, she did testify she "made up some things" . . . "[u]nder the advisement and direct from the agents." (*Id.* at 196; notes of testimony, 6/18/13 at 23.)

The Commonwealth also presented expert medical testimony to the effect that appellant's prescribing of controlled substances was outside of accepted treatment principles. (Notes of testimony, 6/17/13 at 158-159.)

Finally, the Commonwealth presented the testimony of Ronald Thurner, a Senior Deputy Attorney General in the Asset Forfeiture Division. Essentially, Thurner testified that certain bank and investment accounts belonging to appellant were seized or frozen during the investigation of this case. Thurner testified appellant's counsel was informed as to which accounts were affected. (Notes of testimony, 6/12/13 at 127-128.) During this time, appellant was personally served with a petition for forfeiture, and appellant personally signed the receipt. (*Id.* at 137.) Thurner went on to relate that appellant subsequently liquidated some of the accounts that were listed in the petition. (*Id.* at 138-143.)

On June 24, 2013, a jury convicted appellant of six counts of prescribing controlled substances not in good faith, six counts of prescribing controlled substances outside of accepted treatment principles, and one count of prescribing controlled substances to a drug dependent person.[1] Appellant was also convicted of dealing in proceeds of unlawful activities, tampering with or fabricating physical evidence, and obstructing administration of law or other governmental function.[2] On October 29,

---

[1] 35 P.S. §§ 780-113(a)(14)(i), (a)(14)(iii), and (a)(13), respectively.

[2] 18 Pa.C.S.A. §§ 5111(a)(2), 4910(1), and 5101, respectively.

2013, appellant was sentenced to an aggregate term of 9 to 18 years' imprisonment. This timely appeal followed.

Appellant raises the following issues on appeal:

I.      DID THE LOWER COURT ABUSE ITS DISCRETION WHEN IT FAILED TO INSTRUCT THE JURY CONCERNING ENTRAPMENT, UPON DR. SCOTT'S REQUEST, WHERE EVIDENCE ADDUCED AT TRIAL SUPPORTED THE INSTRUCTION?

II.     DID THE LOWER COURT ABUSE ITS DISCRETION BY DENYING DR. SCOTT'S MOTION FOR DIRECTED VERDICT IN CASE NO. 255 OF 2013 WHERE THE COMMONWEALTH FAILED TO ADDUCE ANY EVIDENCE AT TRIAL THAT DR. SCOTT HAD THE REQUISITE INTENT NECESSARY TO SUPPORT A FINDING OF GUILT ON ANY OF THE CHARGES?

III.    DID THE LOWER COURT ABUSE ITS DISCRETION BY DENYING DR. SCOTT'S MOTION TO DISMISS AND MOTION FOR DIRECTED VERDICT IN CASE NO. 516 OF 2010 WHERE THE STATUTE CHARGING HIM WITH PROVIDING CONTROLLED SUBSTANCES TO A DRUG DEPENDENT PERSON IS CONSTITUTIONALLY OVERBROAD AND VOID FOR VAGUENESS, AND FAILED TO PROVIDE SUFFICIENT NOTICE OF THE CRIMINAL ACTIVITY THAT IS PROHIBITED?

IV.     DID THE LOWER COURT ABUSE ITS DISCRETION IN PERMITTING LEWIS COLOSIMO TO TESTIFY AS AN EXPERT WITNESS WHERE HIS TESTIMONY WAS GENERIC, CUMULATIVE, OFFERED WITHOUT ANY KNOWLEDGE OF THE FACTS OR CIRCUMSTANCES OF THE CASE, AND WAS SO PREJUDICIAL AS TO DENY DR. SCOTT'S

CONSTITUTIONAL RIGHT TO DUE PROCESS
AND FAIR TRIAL?

Appellant's brief at 5.

The trial court failed to review Issue I in its opinion filed pursuant to Pa.R.A.P., Rule 1925(a), 42 Pa.C.S.A.; consequently, we will address this issue in full. Otherwise, we find no error with the trial court's holdings. After a thorough review of the record, the briefs of the parties, the applicable law, and the well-reasoned opinions of the trial court, it is our determination that there is no merit to the other questions raised on appeal. The trial court's thorough, 28-page opinion, dated June 17 2014, comprehensively discusses and properly disposes of Issues II and IV. Furthermore, a second 12-page opinion, dated February 17, 2012, properly disposes of Issue III. We will adopt those opinions as our own and affirm on their bases with the following additional analysis.

As to Issue II, pertaining to appellant's intent in regard to his liquidation of certain frozen bank accounts, appellant's argument attempts to shift the blame to the banks for not fulfilling their legal duty to the Commonwealth by releasing the funds. (Appellant's brief at 40.) We find the banks' failure to preserve the subject funds to be completely irrelevant to either appellant's intent or guilt.

We also find it to be of no moment that some accounts that were initially frozen were subsequently released. (Appellant's brief at 39.) This argument suggests that appellant may have unwittingly requested the

release of funds from an account that he believed had been unfrozen but was not. Appellant was aware that the accounts listed in the forfeiture petition were frozen yet nonetheless sought and obtained the funds from some of those accounts. Appellant is fully culpable.

As for Issue III, pertaining to the trial court's decision not to enter a directed verdict as to the prescription offenses on the basis that the statute is unconstitutionally overbroad and vague, we note that the trial court relies largely upon this court's decision in **Commonwealth v. Possinger**, 399 A.2d 1077 (Pa.Super. 1979). In **Possinger**, this court found that the prescription statute was not unconstitutionally vague. On appeal, appellant argues that the trial court's reliance on **Possinger** is misplaced because in **Possinger**, unlike here, the physician prescribed controlled substances to a patient without ever seeing the patient. (Appellant's brief at 48-49.)

It appears that appellant has selectively read **Possinger**. In **Possinger**, three narcotics agents sought prescriptions for controlled substances from Possinger. Agent Robert Bongard contacted Possinger's office on seven occasions. Bongard met face-to-face with appellant on the first five of these appointments, and Possinger performed perfunctory medical examinations on two of these occasions. Bongard obtained prescriptions on only the final two appointments without meeting Possinger. Agents Raymond Stackhouse and Richard Jumper contacted Possinger with Bongard during Bongard's fifth visit and met face-to-face with Possinger.

Possinger wrote prescriptions for Stackhouse and Jumper after performing perfunctory medical examinations on them. Again, it was only on Bongard's final two visits at Possinger's office that he obtained prescriptions for himself, Stackhouse, and Jumper without actually seeing Possinger.

Clearly, **Possinger** is on point with the facts of this case. **Possinger** was not a situation where the physician wrote prescriptions without ever seeing the patient. Possinger met and gave perfunctory medical examinations to each of the agents for whom he wrote prescriptions. This is very similar to what the evidence in this case revealed as to appellant's conduct. We find appellant's attempt to distinguish **Possinger** to be meritless and that the trial court properly relied on this decision.

We now turn to our review of Issue I. Therein, appellant claims that the trial court erred in failing to give an entrapment instruction to the jury based upon Kelly Tritt's attempt to induce appellant to prescribe her controlled substances based upon fabricated injuries where Tritt was directed to make such fabrications by state narcotics officers. We may quickly dispose of this issue.

Preliminarily, we note our standard of review pertaining to jury instructions:

> [W]hen evaluating the propriety of jury instructions, this Court will look to the instructions as a whole, and not simply isolated portions, to determine if the instructions were improper. We further note that, it is an unquestionable maxim of law in this Commonwealth that a trial court has broad discretion

> in phrasing its instructions, and may choose its own wording so long as the law is clearly, adequately, and accurately presented to the jury for its consideration. Only where there is an abuse of discretion or an inaccurate statement of the law is there reversible error.

***Commonwealth v. Antidormi***, 84 A.3d 736, 754 (Pa.Super. 2014), ***appeal denied***, 95 A.3d 275 (Pa. 2014), quoting ***Commonwealth v. Trippett***, 932 A.2d 188, 200 (Pa.Super.2007).

Pennsylvania's criminal statutes provide that a defendant shall be acquitted if he or she can show by a preponderance of the evidence that the defendant was entrapped:

> **(a)** **General rule.**--A public law enforcement official or a person acting in cooperation with such an official perpetrates an entrapment if for the purpose of obtaining evidence of the commission of an offense, he induces or encourages another person to engage in conduct constituting such offense by either:
>
> (1) making knowingly false representations designed to induce the belief that such conduct is not prohibited; or
>
> (2) employing methods of persuasion or inducement which create a substantial risk that such an offense will be committed by persons other than those who are ready to commit it.
>
> **(b)** **Burden of proof.**--Except as provided in subsection (c) of this section, a person prosecuted for an offense shall be acquitted if he proves by a preponderance of evidence that

> his conduct occurred in response to an entrapment.

18 Pa.C.S.A. § 313(a) and (b).

As noted by the Commonwealth, even if Tritt's behavior constituted entrapment and the instruction should have been given, appellant was not prejudiced because he was acquitted on all charges related to Tritt. We agree.

Appellant argues in his reply brief that the taint of Tritt's entrapment somehow extends to all of his other convictions. Appellant argues that Tritt's testimony was critical not just to her claims but to every other allegation against appellant. First, Tritt's testimony itself does not constitute an inducement to commit a crime. Second, there is no transitive effect from Tritt's original false inducements. False information supplied by Tritt as to her own drug needs would not cause appellant to illegally prescribe controlled substances to another patient. Appellant's convictions rest wholly upon prescriptions he wrote for patients other than Tritt. Appellant was convicted of no crime as a result of any false inducement by Tritt. There is no merit here.

Accordingly, we will affirm the judgment of sentence.

Judgment of sentence affirmed.

J. A01009/15

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/6/2015

COMMONWEALTH OF PENNSYLVANIA   :   IN THE COURT OF COMMON PLEAS

             VS.         :   LAWRENCE COUNTY, PENNSYLVANIA

    VAN EDWARD SCOTT     :   NO. 516 OF 2010, CR.

                    :   OTN: T040710-5

## APPEARANCES

For the Commonwealth:       Kristine M. Ricketts, Esq.
                          PA Office of the Attorney General
                          105 Independence Drive
                          Butler, PA  16001

For the Defendant:          Eric D. Levin, Esq.
                          Rishor Simone
                          101 E. Diamond Street, Suite 208
                          Butler, PA  16001

                          Kevin P. Byers, Esq., *pro hoc vice*
                          Kevin P. Byers Co., L.P.A.
                          529 East Town Street, Suite 200
                          Columbus, OH  43215

## OPINION

MOTTO, P.J.                            FEBRUARY 17, 2012

Before the Court for disposition is the Defendant's Motion to Dismiss the criminal information charging twenty-one counts of Unlawful Prescription of a Controlled Substance by a Practitioner, an unclassified felony, in violation of §13(a)(14) of the Controlled Substance, Drug Device and Cosmetic Act (35 P.S. §780-113(a)(14)) and seven counts of Unlawful Prescription to a Drug Dependent Individual, an unclassified misdemeanor, in violation of §13(a)(13) of the Controlled Substance, Drug Device and Cosmetic Act (35 P.S. §780-113(a)(13)). Defendant's motion contends that the aforesaid charging statutes are unconstitutionally vague, thus contravening Defendant's right to



53RD
JUDICIAL
DISTRICT

LAWRENCE COUNTY
PENNSYLVANIA

2012 FEB 17 A 7: 40

Due Process under the Fourteenth Amendment to the United States Constitution. Defendant argues that the statutes fail to adequately and meaningfully inform physicians of what conduct is proscribed.

Pursuant to the Controlled Substance, Drug Device and Cosmetic Act, §13(a)(14) prohibits the following:

> (14) The...prescription of any controlled substance by any practitioner...unless done (i) in good faith in the course of his professional practice; (ii) within the scope of the patient relationship; (iii) in accordance with treatment principles accepted by a responsible segment of the medical profession.

Section 13(a)(13) of the Controlled Substance, Drug Device and Cosmetic Act prohibits the following:

> (13) The...prescription...by any practitioner otherwise authorized by law to do so of any controlled substance to any person known to such practitioner to be or whom such practitioner has reason to know is a drug dependent person, unless said drug is prescribed,...for the cure or treatment of some malady other than drug dependency...

The Superior Court has considered the argument that §13(a)(14) of the act is unconstitutionally vague in violation of the Due Process Clause of the Fourteenth Amendment of the United States Constitution, and has refuted such contention, finding the statute to be constitutional in Commonwealth v. Possinger, 264 Pa.Super. 332, 399 A.2d 1077 (1979).

In Possinger, the defendant physician was convicted of violating the above statute under circumstances similar to the case at bar, where the defendant is accused of prescribing high amounts of controlled substances to patients where visits would last a couple of minutes, exams did not include the taking of vital signs, little, if any, physical examinations, self-

53RD
JUDICIAL
DISTRICT

LAWRENCE COUNTY
PENNSYLVANIA

2012 FEB 17 A 3:54

2

reporting of physical conditions with requested increases of medication, providing patients with requested prescriptions without a medical basis to do so and providing prescriptions to patients who were known to sell drugs obtained with the defendant's prescriptions and to others who were known addicts who fed their habit with drugs obtained from the defendant. Possinger found the statute to be constitutional both on its face and as applied to the facts of the case.

The manifest purpose of the statute, as noted in Possinger, is to limit the dispensing of controlled substances by a physician to the bounds of his professional practice, and to prevent "drug-pushing" by doctors.

The terms of a penal statute creating an offense must be sufficiently explicit to inform those who are subject to it of the conduct on their part which would render them liable to its penalties. Connally v. General Construction Co., 269 U.S. 385, 46 S.Ct. 126 (1926). A statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application, violates the first essential of due process of law. In order to survive a vagueness challenge, the statute in question must give adequate notice of what is criminally proscribed. Lansetta v. State of New Jersey, 306 U.S. 451, 59 S.Ct. 618 (1939). In order to survive a vagueness challenge, a court must determine that the statute gives a person of ordinary intelligence a reasonable opportunity to know what is prohibited and that the law provides explicit standards for those who apply

53RD
JUDICIAL
DISTRICT

LAWRENCE COUNTY
PENNSYLVANIA

FILED/ORIGINAL

2012 FEB 17  A 9:40

3

it.  Chatin v. Coombe, 186 F.3d 82, 87 (2nd Cir. 1999); United States v. Handakas, 286 F.3d 92, 111 (2nd Cir. 2002).

Relative to the first two subdivisions of §13(a)(14), specifically subsections (i) and (ii) the Possinger court stated the following:

> That the first two subdivisions of this statute meet the requirements of due process should not be doubted. Congress has passed provisions similar to §780-113(a)(14), See 21 U.S.C. §802(20), 829(a)(b) and 841(a)(1)(1972), which federal courts have repeatedly upheld under attacks based on the Fourteenth Amendment.  In United States v. Jobe, 487 F.2d 268 (10th Cir. 1973), Cert. Denied 416 U.S. 955 94 S.Ct. 1968, 40 L.Ed.2d 305 (1974), a physician, under facts almost identical to the facts here, was convicted under the federal statutes.  On appeal, the Court held that the conviction was valid, and that the Defendant's due process rights were not violated because the federal statutes proscribed the prescription of controlled substances unless for "a legitimate medical purpose" and "in the usual course of (the doctor's) professional practice.  United States v. Jobe, Supra at 269.  See also United States v. Collier, 478 F.2d 268 (5th Cir. 1973); United States v. Rosenberg, 515 F.2d 190 (9th Cir.) Cert. Denied 423 U.S. 1031, 96 S.Ct. 562, 46 L.Ed.2d 404 (1975); Annot., 33 A.L.R. (Fed.) 220, 223-34 (1977). (The term "in the course of professional practice" is not vague because it has been subject to frequent judicial construction).

Possinger, at 1079, 1080.

Possinger then went on to consider the constitutionality of §13(a)(14) in connection with the third subsection, (iii) requiring that the dispensing of controlled substances be "in accordance with treatment principles accepted by a responsible segment of the medical profession."  Possinger cited Commonwealth v. Stoffan, 228 Pa.Super. 127, 323 A.2d 318 (1974) for the proposition that this statutory provision was specific enough to provide a standard of conduct to which physicians

53RD JUDICIAL DISTRICT

LAWRENCE COUNTY PENNSYLVANIA

4

could be held legally accountable. In Stoffan, the Court was interpreting §13(a)(14) of the Controlled Substance, Drug Device and Cosmetic Act (35 P.S. §780-113(a)(14)), as it read prior to its amendment in 1974, which prohibited prescription of a controlled substance except after a physical or visual examination or except where the practitioner is satisfied by evidence that the person is not a drug dependent person. Stoffin held that evidence of what treatment principles are accepted by a responsible segment of the medical profession would indicate what a practitioner generally must do in order to obtain sufficient information to form an opinion that the patient is not drug dependent, and that by considering what the practitioner has done in particular circumstances, and by comparing his conduct with what a reasonable segment of the medical profession would say should have been done, a determination may be made whether a physical or visual examination was conducted. Possinger, citing and relying on Stoffin, concluded that the clause "in accordance with treatment principles accepted by a responsible segment of the medical profession" was specific enough to provide a standard of conduct to which physicians could be held legally accountable. Possinger concluded that the fact that the clause when interpreted by Stoffan, was found in a different section of the Controlled Substance, Drug Device and Cosmetic Act and was not added to Section (a)(14) until 1974, after Stoffin was decided, did not make the clause less specific. Possinger, at 1080.

53RD
JUDICIAL
DISTRICT

LAWRENCE COUNTY
PENNSYLVANIA

FILED/ORIGINAL

2012 FEB 17 A 045

5

Defendant also asserts a vagueness challenge as applied to the facts of this case. In United States v. Mazurie, 419 U.S. 544, 95 S.Ct. 710, the United States Supreme Court held that vagueness challenges to statutes which do not involve First Amendment freedoms must be examined in light of the facts of the case at hand.

The Court here concludes that even utilizing the fact-specific review of the statute, the statute, §13(a)(14) of the Controlled Substance, Drug Device and Cosmetic Act is not unconstitutionally vague as applied to this case because the statute is sufficiently detailed to put a person liable thereunder on notice of the proscribed conduct, including the conduct complained of here. As stated in Connally v. General Construction Co., 269 U.S. at 391, 46 S.Ct. at 126, "It will be enough for present purposes to say generally that the decisions of the Court upholding statutes as sufficiently certain, rested upon the conclusion that they employed words or phrases having a technical or other special meaning, well enough known to enable those within their reach to correctly apply them. Here, applying the reasoning of Possinger, the statute provides an adequate description of the conduct that is not permissible, and clearly health care professionals are able to understand the parameters of the statute. Although the Defendant here asserts that the statute is too vague to give him reasonable notice that the conduct alleged this case was illegal; nonetheless, Possinger stands for the proposition that a statute affecting medical practice will not be deemed unconstitutionally vague

53RD
JUDICIAL
DISTRICT

LAWRENCE COUNTY
PENNSYLVANIA

2012 FEB 17 A 8 45

6

because it "need not delineate the precise circumstances constituting the bounds of permissible practice". United States v. Collier, Supra, at 272. As the Possinger court stated:

> Even though doubts as to the applicability of §780-113(a)(14) in marginally fact situations can be conceived, in more doubtful cases than the one presented here the courts have confirmed convictions recognizing that the law is full of instances where a man's fate depends on his estimating rightly, that is, as a jury subsequently estimates it, some matter of degree. Commonwealth v. Heinbaugh, 467 Pa. 1, 7, 354 A.2d 244, 247 (1976) citing United States v. Powell, 423 U.S. 87, 93, 96 S.Ct. 316 (1975). See also Commonwealth v. Hughes, 468 Pa. 502, 363 A.2d 306 (1976). [F.N.3].

Commonwealth v. Possinger, 264 Pa.Super. at 335, 399 A.2d at 1080.

Here, in addition to the factors above set forth upon which the Commonwealth relies, the Commonwealth has obtained an expert opinion that the Defendant's conduct was not in accordance with treatment principles accepted by a responsible segment of the medical profession. The expert opinion reviews the medical records of the each of the patients of the defendant doctor and points out how the prescribing of the controlled substance in each case fell below the accepted standard of medical practice, and how the prescribing of the controlled substance was not in accordance with treatment principles accepted by a responsible segment of the medical profession. As to each patient, expert opinion details what is shown in the records, and what would have been required to be shown or done by the doctor in order to justify the prescribing of the contraband in accordance with accepted medical principles. Although this evidence has yet to be presented to the fact finder, it is referenced at this

53RD
JUDICIAL
DISTRICT

LAWRENCE COUNTY
PENNSYLVANIA

FILED/ORIGINAL

2012 FEB 17 A 10 45

7

juncture of the case only as it relates to Defendant's argument as to the constitutionality of the statute as applied to the facts of this case, to demonstrate that at this point in the case there is no basis, in accordance with Possinger, to conclude that the statute is unconstitutionally vague as applied to this case, where it is found to be constitutional on its face.

Relative to Defendant's argument that §13(a)(13) of the Controlled Substance, Drug Device and Cosmetic Act, which prohibits prescribing a controlled substance to an individual when the Defendant knew or had reason to know that the individual was a drug dependent person, the Court notes that the statute which was reviewed in Commonwealth v. Stoffan, Supra, which in turn was relied upon by Commonwealth v. Possinger, Supra, in addressing the constitutionality issue addressed a statute that was a predecessor to the current version of 13(a)(14) of the Controlled Substance, Drug Device and Cosmetic Act, which prohibited the prescription of a controlled substance except after a physical or visual examination or except where a practitioner is satisfied by evidence that the person is not a drug dependent person. The Court held that the Commonwealth had the burden of proving that the practitioner was not satisfied by evidence that the person was not a drug dependent person and that this element was a subjective standard. However, the use of this subjective standard did not bar the introduction of expert testimony. Evidence of minimum standards in medical practice should have been allowed, and was wrongfully excluded

53RD
JUDICIAL
DISTRICT

LAWRENCE COUNTY
PENNSYLVANIA

FILED/ORIGINAL

2012 FEB 17  4 8

by the trial judge, relative to the Commonwealth's burden to prove that the practitioner was not satisfied by evidence that the person was not a drug dependent person. Thus, for purposes of that statute, prohibiting prescription of any controlled substance except after a physical or visual examination or except where the practitioner is satisfied by evidence that the person is not a drug dependent person, the Commonwealth may meet its burden of proof with evidence of treatment principles accepted by a responsible segment of the medical profession that would indicate what a practitioner must do in order to obtain sufficient information to form an opinion that the patient is not drug dependent. Stoffan further stated that by considering what the practitioner has done in the particular circumstances and by comparing his conduct with what a reasonable segment of the medical profession would say should have been done, a determination may be made whether a physical or visual examination was conducted. Although Stoffan itself did not specifically address an argument as to the constitutionality of the statute based on vagueness, Possinger relied upon the analysis in Staffon to address the constitutionality argument with respect to 13(a)(14). Thus, the conclusion here is that it is not a violation of due process to rely upon a standard consisting of treatment principles accepted by a responsible segment of the medical profession in defining what constitutes the unlawful prescribing of a controlled substance to a drug dependent individual.

53RD
JUDICIAL
DISTRICT

LAWRENCE COUNTY
PENNSYLVANIA

FILED/ORIGINAL

2012 FEB 9  A 12 45

Defendant specifically argues that a lack of notice exists because the Commonwealth Board Guidelines expressly direct that "physicians should recognize that tolerance and physical dependence are normal consequences of sustained use of opioid analgesics and are not synonymous with addiction; that counts 22-28 allege that Dr. Scott prescribed medications to "drug dependent" patients and that the definition of "drug dependent" contained in §2 of the Act (35 P.S. §780-102) means a person who is both a "drug addict" and who is "drug dependent". Defendant argues that the guidelines encourage pain management physicians to consider the signs behind drug tolerance and dependency and to continue treatment of patients with opioids even if tolerance and dependence are apparent; however, the statutes §13(a)(13) and §2 criminalize prescribing to a "drug dependent" person. Therefore, Defendant argues that the physician is essentially caught in a trap that is violative of due process, since one branch of government expressly encourages conduct which another branch criminalizes and prosecutes. Defendant also asserts violations of the Commonwealth's Constitution, §9 due process and the constitutional prohibition against ex post facto laws in §17.

The Court concludes that the Defendant's argument must fail because it is not the guideline that defines criminal conduct but, rather, the criminal statute, §13(a)(13). Irrespective of what the guidelines announce as being the normal consequences of sustained use of opioid analgesics, the statute is clear as to what a doctor cannot do in light of the holdings of Stoffan and

33RD
JUDICIAL
DISTRICT

LAWRENCE COUNTY
PENNSYLVANIA

2012 FEB 17 A 8 45

10

Possinger. Irrespective of the guideline, the doctor cannot prescribe a controlled substance to a person known to a practitioner to be or whom such practitioner has reason to know is a drug dependent person. A drug dependent person is defined as a person using a drug, controlled substance or alcohol, and who is in a state of psychic or physical dependence, or both, arising from the administration of that drug, controlled substance or alcohol on a continuing basis. The definition goes on to state that such dependence is characterized by behavioral and other responses which include a strong compulsion to take the drug, controlled substance or alcohol on a continuous basis in order to experience is psychic affects or to avoid the discomfort of its absence, the definition to include persons commonly known as "drug addicts". Simply put, the statute criminalizes the prescribing of a drug to a person who is in a state of psychic or physical dependence on that controlled substance. The only exception in the statute which would allow the prescribing of a controlled substance to an individual who is drug dependent would be if the drug is prescribed for the cure or treatment for some malady other than drug dependency. If the physical dependency meets the definition contained in §2, and the dependency is known or the practitioner has reason to know of the dependency, and if the prescribing of the medication is not for the cure or treatment of some malady other than drug dependency, then the drug cannot be prescribed without violating §13 of the Controlled Substance, Drug Device and Cosmetic Act.

53RD
JUDICIAL
DISTRICT

LAWRENCE COUNTY
PENNSYLVANIA

11

Any interpretation of the referenced guideline must give way to the directive of the criminal statute.

Defendant also argues that the counts premised upon a violation of §13(a)(13) of the act should be dismissed because the statute itself provides Defendant with an exemption from its application. The statute is not violated if the drug is prescribed for the cure or the treatment of some malady other than drug dependency. Defendant asserts that there can be no evidence that Defendant was undertaking to treat patients who were "drug dependent" as he was treating them for subjective reports of pain as verified by objective clinical data. The difficulty with Defendant's argument is that it does not address the constitutionality of the statute but rather raises a factual issue as to whether the statute has been violated. This factual issue must be reserved for the trial of this case and cannot be determined at this juncture.

## CONCLUSION

For the reasons above set forth, Defendant's Motion to Dismiss shall be denied by separate order of court.

53RD
JUDICIAL
DISTRICT

LAWRENCE COUNTY
PENNSYLVANIA

12

COMMONWEALTH OF PENNSYLVANIA : IN THE COURT OF COMMON PLEAS

VS. : LAWRENCE COUNTY, PENNSYLVANIA

VAN EDWARD SCOTT : NO. 516 OF 2010, CR.
: OTN: S058963-2

: NO. 255 OF 2013, CR.
: OTN: T296671-4

APPEARANCES

For Commonwealth:
Gregory J. Simatic, Esq.
Deputy Attorney General
Office of the Attorney General
Appeals and Legal Services Section
564 Forbes Avenue, 6th Floor
Pittsburgh, PA 15219

For Defendant:
Mark K. McCulloch, Esq.
Brownstone, P.A.
201 N. New York Avenue, Suite 200
P.O. Box 2047
Winter Park, Florida 32790

OPINION

MOTTO, P.J.                                      JUNE 17, 2014

The Defendant having filed an appeal to the Superior Court from the Judgment of Sentence issued in each of the above captioned consolidated cases, and the Court being in receipt of Defendant's Concise Statement of Matters Complained of on Appeal, this Opinion is issued in conformity with Pa.R.A.P. 1925(a).

Following a jury trial, the Defendant was convicted at case No. 516 of 2010, Cr. of six counts each of Prescribing Outside Accepted Treatment Principles, an unclassified felony, in violation of 35 Pa.C.S.A. §780-113(a)(14) of the Controlled Substance, Drug Device and Cosmetic Act; six counts of

53RD
JUDICIAL
DISTRICT

LAWRENCE COUNTY
PENNSYLVANIA

Prescribing Not in Good Faith in Course of Professional Practice, an unclassified felony, in violation of 35 Pa.C.S.A. §780-113(a)(14) of the Controlled Substance, Drug Device and Cosmetic Act; and one count of Prescribing to a Drug Dependent Person, an unclassified misdemeanor, in violation of 35 Pa.C.S.A. §780-113(a)(13) of the Controlled Substance, Drug Device and Cosmetic Act. Defendant received an aggravated sentence of imprisonment of not less than 8 years nor more than 16 years.

At case No. 255 of 2013, Cr., Defendant was convicted of and sentenced following a jury verdict on charges of Dealing in Unlawful Proceeds, a felony of the 1st degree, in violation of 18 Pa.C.S.A. §5111(a)(2) of the Crimes Code; Tampering With/Fabricate Physical Evidence, a misdemeanor of the 2nd degree, in violation of 18 Pa.C.S.A. §4910(1) of the Crimes Code; and Obstructing Administration of Law or Other Governmental Functions, a misdemeanor of the 2nd degree, in violation of 18 Pa.C.S.A. §5101 of the Crimes Code. The sentences at case No. 255 of 2013, Cr. were ordered to be served concurrent with each other but consecutive to the sentences at case No. 516 of 2010, Cr. adding thereto a term of imprisonment of not less than 1 year nor more than 2 years, the Defendant's total aggregate sentence of imprisonment in both cases therefore amounting to a total sentence of not less than 9 years nor more than 18 years.

In the Concise Statement of Matters Complained of on Appeal, Defendant raises seven assignments of error, each one of which shall be addressed separately in this Opinion.

A.  Error in Denial of Motion to Dismiss and Motion for Directed Verdict at Case No. 516 of 2010, Cr. on basis that charging statute is constitutionally overbroad and void for vagueness and where charging documents fails to give sufficient notice to Defendant of criminal activity that is prohibited.

In Paragraph A of Defendant's Concise Statement of Matters Complained of on Appeal the Defendant asserts that the Court erred and abused its discretion by denying Defendant-Appellant's Motion to Dismiss and Motion for Directed Verdict in case No. 516 of 2010, Cr. where the statute charging Defendant-Appellant with Providing Controlled Substances to a Drug Dependent Person is constitutionally overbroad and void for vagueness, and where the charging document fails to provide sufficient notice to the Defendant of the criminal activity that is prohibited.

The Court finds that this issue was specifically addressed in the Opinion and Order of Court dated February 17, 2012, which found the charging statutes at case No. 516 of 2010, Cr. to be constitutional and denied the Defendant's Motion to Dismiss the criminal information on the basis that the charging statutes were overly broad and void for vagueness and otherwise denying Defendant's constitutional attack on the charging statutes applicable to the case at No. 516 of 2010, Cr. The aforesaid Opinion of the Court dated February 17, 2012 is incorporated herein by reference and satisfies the requirements of Pa.R.A.P. 1925(a) relative to this assignment of error.

53RD
JUDICIAL
DISTRICT

LAWRENCE COUNTY
PENNSYLVANIA

3

B.   Error in Permitting Lewis Colosimo to Testify
as an Expert Witness in Diversion of
Controlled Substances

In Assignment B Defendant asserts that the Court erred and abused its discretion in permitting Lewis Colosimo to testify as an expert witness where he was unqualified pursuant to the Pennsylvania Rules of Evidence, offered testimony that was, at best, generic and cumulative, offered such opinion testimony without any knowledge of the facts or circumstances of the instant litigation, and whose testimony was so prejudicial as to deny Defendant-Appellant's constitutional right to due process and fair trial.

Lewis Colosimo was proffered by the Commonwealth as an expert in controlled substances and diversion.  He is employed as a diversion investigator for the United States Drug Enforcement Administration in Pittsburgh.  As a diversion investigator, he is tasked with investigating, preventing, detecting the diversion or illegal distribution of pharmaceutical controlled substances.  After a review of his experience and education, he was offered for voir dire as to qualifications.  Counsel for Defendant conducted a voir dire of Mr. Colosimo as to his qualifications.  Following the voir dire by counsel for Defendant, counsel at page 157 of the transcript of the trial testimony of June 11, 2013 stated "he is obviously an expert, ..."  Thus, Defendant has waived any objection to the qualifications of Lewis Colosimo as an expert in the proffered field.

53RD
JUDICIAL
DISTRICT

LAWRENCE COUNTY
PENNSYLVANIA

4

As to Defendant's argument that the testimony of Mr. Colosimo was generic, cumulative, offered without knowledge of the facts or circumstances of the instant case, and prejudicial as to deny Defendant-Appellant's constitutional right to due process and fair trial, the Court finds that the testimony of Mr. Colosimo was merely background information designed to give the jury an understanding of the process by which the distribution of drugs are controlled so that drugs having an accepted medical use may be provided to lawful consumers but preventing the diversion of drugs that have no medical use, or having drugs with an accepted medical use from being unlawfully diverted to persons having no lawful right to possess or use the same. Essentially the purpose of Mr. Colosimo's testimony was to explain to the jury the topics, definitions and concepts related to drug diversion such as how the scheduling of different drugs is determined, how the law provides for a closed system of distribution and how a physician must be licensed in order to be authorized to prescribe controlled substances and that diversion can occur where a physician is not prescribing for a legitimate medical reason.

Defendant cannot argue that Mr. Colosimo's testimony was prejudicial as he presented no testimony that was specific to any conduct of Defendant, nor was he offered for any purpose relating directly to any specific conduct of the Defendant. The testimony was relevant only for the purpose of giving the jury an understanding of the process to prevent the illegal diversion of controlled substances. The assignment of error does not

53RD
JUDICIAL
DISTRICT

LAWRENCE COUNTY
PENNSYLVANIA

5

identify why Defendant believes the testimony was prejudicial. The evidence was relevant because it aided the understanding of the jury as to the process for controlling the distribution of drugs and preventing the illegal distribution of drugs, a process that the Defendant was subject to and by which he was controlled.

Probative value of evidence exists if there is any tendency to make the existence of a material fact more or less probable than it would be without the evidence. Any probative value can make evidence relevant. When the relevant evidence is challenged under Pa.R.E. 403, the extent of its probative value must be considered and balanced against the possibilities of inviting resolution on an improper basis or wasting courtroom resources, including judicial time and juror patience, and against the danger of unfair prejudice or confusion. Sprague v. Walter, 441 Pa.Super. 1, 39; 656 A.2d 890, 909 (Pa.Super. 1995), app.denied, 543 Pa. 695; 670 A.2d 142 (1996).

Nothing about Mr. Colosimo's testimony was inflammatory or such that would cause the jury to put the Defendant unfairly in a bad light. Even without expert testimony, the average person would understand that drugs are controlled and in general unavailable without a prescription from a medical doctor. Providing a jury with more background information on the process for determining how drugs are scheduled, the basis for determining different schedules for certain drugs, including the drugs that the Defendant was accused of unlawfully prescribing, would aid the jury in understanding the evidence that would be

53RD
JUDICIAL
DISTRICT

LAWRENCE COUNTY
PENNSYLVANIA

6

subsequently presented as to the illegal activity of the Defendant. The witness clearly acknowledged that he had no information as to any illegal activity of the Defendant, but was explaining a process relative to which Defendant was subject. Essentially, Mr. Colosimo educated the jury on the concept that the medications that were the subject of this case were in fact controlled substances and not obtainable without a valid prescription issued by a licensed physician for a legitimate medical purpose. Defendant did not set forth any specific reason at trial as to why such testimony should be considered to be prejudicial to him.

### C. Admissibility of Data Summary

In Paragraph C of his Concise Statement the Defendant states that the Court erred and abused its discretion in admitting into evidence an inaccurate, incomplete, and highly prejudicial data summary.

Commonwealth Exhibits 30 through 37 consisted of a summary of prescriptions for Schedule II substances written by the Defendant relative to the specific patients who were alleged to have been illegally prescribed these substances by Dr. Scott. The exhibits constitute a summary of voluminous information compiled from other sources. The summary identified the patient, the prescriptions issued to the patient, the date of the prescription and the specific drug for which the prescription was issued, the date of an office visit, the

pharmacy at which the prescription or prescriptions were filled, and the dosage unit as in quantity of pills.

This information was compiled from patient profiles obtained from the pharmacy, original prescriptions and the patient file maintained by Defendant. Each chart or exhibit related to a separate patient.

The information contained in the summary was clearly relevant as it showed exactly the pattern of prescribing that Defendant utilized relative to each of the patients that were involved in this criminal proceeding. Obviously, what the doctor prescribed, how often and under what circumstances, was the basis for the charges of overprescribing or prescribing not in accordance with accepted medical criteria themselves. The question therefore becomes one of authentication which is specifically governed by Pa.R.E. 1006. That rule provides in its entirety as follows:

Rule 1006. Summaries to prove content.

The proponent may use a summary, chart, or calculation to prove the content of voluminous writings, recordings or photographs that cannot be conveniently examined in court. The proponent must make the originals or duplicates available for examination or copying or both, by other parties at a reasonable time and place. And the Court may order the proponent to produce them in court.

Pa.R.E. 1006 is identical to Federal Rule of Evidence 1006 which was analyzed by Judge Lechner of the Federal District Court of New Jersey as follows:

As long as summary charts meet the following requirements, they are admissible: (1) The underlying documents must be admissible, even if they are never admitted; (2) The underlying documents must be too voluminous for convenient in-court review; (3) the charts must accurately summarize the underlying documents; (4) the summary charts and the

underlying documents must have been made available at a reasonable time and place for inspection by the opposing side; and (5) the person who prepared the charts must have been made available for cross-examination.

United States v. Bertoli, 854 F.Supp. 975, 1051 (D.N.J.), Aff'd. in part, rev'd in part on other grounds, 40 F.3d 1384 (3d Cir. 1994).

F.R.E. 1006 "recognizes that it often takes a great deal of court time to introduce a legion of documents to establish a single point". Bertoli, 854 F.Supp. at 1050. "In addition, courts cannot rationally expect an average jury to compile summaries and to create sophisticated flow charts to reveal patterns that provide important references..."

In PennDOT v. Anjo Const. Co., 666 A.2d 753 (Pa.Commw. 1995), a summary of spread sheets itemizing the elements of a bid, together with the total estimate for a project was held admissible. The court noted that the prerequisite for admissibility was the testimony of the individual who had developed the estimate, who was available for cross examination, and who had reconstructed the bid on the spreadsheets, summarizing the same voluminous information from which the original bid was constructed. In Keller v. Porta, 172 Pa.Super. 651; 94 A.2d 140 (1943), records available for a defendant's examination but not placed into evidence were appropriately the subject of a summary admitted into evidence.

The Court finds that the requirements of Pa.R.E. 1006 have been met. All of the information was obtained either from the pharmacy patient profiles, the original prescriptions issued by the Defendant, and information obtained from the Defendant's own

53RD
JUDICIAL
DISTRICT

LAWRENCE COUNTY
PENNSYLVANIA

9

files relating to the subject patients, and the exhibits constituted a summary of voluminous information. (Notes of Testimony, June 11, 2013, p. 104). It is undisputed that the majority of the data in the charts was made available through discovery at least three years before trial, including patient visits and the dates of the visits. The existence of original prescriptions that were confiscated from pharmacies was also given in discovery. Defense counsel had also been advised that any piece of evidence in the custody of the Commonwealth could be examined by making arrangements to come to the office and review physical evidence. Pharmacy profiles were referenced in search warrants that were disclosed in discovery and pharmacy profiles were attached to the reports of the investigating agent that were disclosed in discovery. Counsel for Defendant at trial agreed that there was no issue regarding pharmacy profiles stating "we don't have any problems with pharmacy profiles. They are what they are." (Notes of Testimony, June 11, 2013, p. 104, 105). Furthermore, the patient profiles themselves were admitted into evidence without objection. The patients' files are marked Commonwealth Exhibits 4 through 11. Exhibits 22 through 28 are patient profiles taken from specific pharmacies. Commonwealth Exhibits 13 through 21 are original prescriptions. These original prescriptions were admitted over objection that there was not sufficient authentication of the handwriting; however, the prescriptions themselves which were included within the summary were nevertheless available for inspection by Defendant and counsel for Defendant. At trial, Defendant's

53RD
JUDICIAL
DISTRICT

LAWRENCE COUNTY
PENNSYLVANIA

10

counsel argued that the summary was incomplete because prescriptions that were deemed suspect were not included in the chart. However, the ones that were included in the chart were the original prescriptions that could be corroborated by the doctor's own patient files. To exclude those that could not be corroborated worked only to the Defendant's advantage and, to the extent that Defendant wished to point out the perceived inaccuracy or incompleteness of the chart, he was free to do so on cross-examination. The authentication of these prescriptions is discussed in Section D, infra. However, the Court's conclusion here is that the summaries were made from admissible and original documents that were available to the Defendant for inspection prior to and at trial, and which were voluminous, therefore meeting the requirements of Pa.R.E.P. 1006.

### D. Authentication of Handwriting on Prescriptions Written by Defendant.

In Subsection D of the Concise Statement of Matters Complained of, the Defendant contends that the Court erred and abused its discretion in permitting a lay witness, James Embree, with no basis and knowledge or fact, to authenticate handwriting on certain prescriptions that were supposedly written by the Defendant-Appellant.

Commonwealth agents, including Agent Embree, utilizing search warrants, had seized from various pharmacies prescriptions that were represented to be the original prescriptions on record with the pharmacies written by

Defendant. After testimony had already been introduced establishing that these were original prescriptions filtered to be only ones prescribed by Defendant, Agent Embree corroborated that determination by testifying that he had compared all of the signatures on these prescriptions and stated that they all appeared to be written by the same individual and that they were distinctive because he observed a very distinct "capital V" for the beginning of his name "Van Scott" and that all of the signatures looked similar.

Although Defendant characterizes the testimony of Agent Embree as authentication of Defendant's handwriting, in reality the agent was making an observation as a lay person that all of the signatures appeared to be similar, an observation that could have made just as easily by the trier of fact. Agent Embree did not propose to have any special expertise nor any particular familiarity with Defendant's signature other than the fact that all of the signatures on prescriptions that were seized and provided to him as being Defendant's prescriptions were all similar in appearance.

The real question regarding this issue is whether the prescriptions identified as those being of the Defendant were properly authenticated, which prescriptions were ultimately summarized in the exhibits above referred to as the "data summary".

The prosecution of this case was based upon eight patients of Defendant. Introduced into evidence were the eight patient files of the Defendant, all of which containing entries as to

what Dr. Scott prescribed. In addition, patient profiles from each pharmacy utilized by the eight patients were seized. Patient profiles are maintained by a specific pharmacy and gathers data about any prescription that a patient would have filled at that pharmacy. Unobjected to testimony of Agent Embree established that the pharmacy keeps the data for their own business use and that data can be searched for the benefit of the agent using filters that allow a search by patient and by specific medications. This data is used to provide statutory requirements as to distribution of Schedule II drugs by the pharmacy. Agent Embree collected patient profiles for the eight patients identified in the patient files that were introduced into evidence as Exhibits 4 through 11. He requested patient profiles from April 6, 2005 through April 6, 2010 relative to Defendant, Dr. Van Edward Scott, narrowed to Schedule II substances. Independent exhibits were offered into evidence for approximately ten pharmacies. Exhibit No. 21 was the patient profile received from College Hill Pharmacy relative to patient Barbara Izotic, notarized. It showed the prescriptions filled for patient Barbara Izotic at College Hill Pharmacy for prescriptions written by defendant for the period April of 2005 through April 2010. This process was repeated for other patients for Exhibits 23 through 29, which showed prescriptions written by Defendant for the patients who were the subject of this criminal prosecution.

In addition, Agent Embree and other agents working under his supervision seized original scripts from the pharmacies.

without objection, these original scripts were identified without objection as being original prescriptions seized from the various pharmacies by the agents. Notes of Testimony, July 11, 2013, p. 89, 90 and 91.

All of these prescriptions which formed Commonwealth's Exhibits 13 through 21 were identified as being original prescriptions written by Defendant for the various patients involved in these proceedings with testimony that they had been filtered for only ones prescribed by Van Scott, all of this testimony coming in without objection. An objection came only when Agent Embree made the observation that all of the signatures on these prescriptions were similar. The only prescriptions utilized were prescriptions that matched with the pharmacy profiles.

Pa.R.E. 901(a) provides that to satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is. The authenticity of a writing offered as evidence is always a preliminary matter for the court to determine. Brenner v. Lesher, 332 Pa. 522, 525; 2 A.2d 731, 733 (1938). The preliminary question for judicial determination is whether the testimony, if believed by the jury, would establish the identity of the documents or exhibits offered. Only the trier of fact may decide whether the evidence is worthy of any credence. Commonwealth v. Brooks, 352 Pa.Super. 394, 401, 508 A.2d 316, 320 (1986).

When the proposed evidence is a document, "the existence of some connection between that writing and a particular individual" will have to be shown. The showing depends on "what standards are to be applied in determining whether the connection has been made to appear. Commonwealth v. Harrison, 290 Pa. 389, 397-98; 434 A.2d 808, 812 (1981) quoting McCormick, Law of Evidence, Section 218 at 543 (2d Ed. 1972). In Commonwealth v. Brooks, Supra, one of a series of letters written by a defendant to the witness was held authenticated by the appearance, contents and surrounding events.

Additionally, a lay person is able to recognize signatures or handwriting with which they are familiar. A document can be identified under Pa.R.E. 901(b)(2) through the opinion testimony of lay witnesses who are familiar with the handwriting or signature that appears thereon. The signature on the document may provide a basis for identification and admission of the document into evidence. Neither expert testimony nor comparison to specimens are involved in this method. The identification of handwriting is "one of the few instances in which law accepts from witnesses belief in facts, instead of facts themselves". Travis v. Brown, 43 Pa. 9, 12 (1862). The knowledge of the witness as to the handwriting must have been acquired for some purpose other than testifying in the litigation. Morgan v. First Pennsylvania Bank, 373 Pa. 408, 413-14; 541 A.2d 380, 383 (1988).

Here there is sufficient evidence to authenticate the original prescriptions as having been issued under the signature

53RD
JUDICIAL
DISTRICT

LAWRENCE COUNTY
PENNSYLVANIA

15

of the Defendant. The unchallenged testimony of Agent Embree was that these were the original prescriptions of Dr. Scott provided to him by the pharmacies as the result of a warrant procedure, which were in fact maintained by the pharmacies. These prescriptions matched up with the patient profiles maintained by the pharmacies as required by law, and with the information contained in the patient files that were in fact the patient files maintained by Defendant Scott. In addition, the agent testified that all the signatures looked similar and had the distinctive characteristic of the "capital v" as the beginning of Defendant's names and the agent would have been familiar with the signature as there were prescriptions that the agent received directly from cooperating witnesses who procured the prescriptions from Dr. Scott but instead of processing them, gave them directly to the agent. Prescriptions obtained from the pharmacies that were not consistent with the patient profiles or the patient files were not utilized as evidence, nor was information from them utilized in the data summary. All of these factors cause the court to conclude that the prescriptions were properly authenticated in accordance with Pa.R.E. 901(a).

### E. Denial of Motion for Directed Verdict at Case No. 255 of 2013

In Paragraph E of Defendant's Concise Statement Defendant alleges that the Court erred and abused its discretion by denying Defendant-Appellant's Motion for a Directed Verdict in Case No. 255 of 2013, Cr. or the Commonwealth failed to introduce any evidence at trial that Defendant-Appellant had the

53RD
JUDICIAL
DISTRICT

LAWRENCE COUNTY
PENNSYLVANIA

16

requisite intent necessary to support a finding of guilt on any of the charges.

At case No. 255 of 2013, Cr. Defendant was convicted of and sentenced on charges of Dealing in Unlawful Proceeds, a felony of the 1st degree, in violation of §5111(a)(2) of the Crimes Code; Tampering With/Fabricate Physical Evidence, a misdemeanor of the 2nd degree, in violation of §4910(1) of the Crimes Code; and Obstructing Administration of Law of Other Government Functions, a misdemeanor of 2nd degree, in violation of §5101 of the Crimes Code.

All of these charges related to the actions of Defendant in liquidating various financial accounts owned by him after said accounts had been seized as the result of forfeiture proceedings arising out of the consolidated case at No. 516 of 2010, Cr.

Defendant was arrested on the underlying criminal charges at case No. 516 of 2010, Cr. on April 8, 2010, and received a copy of grand jury Presentment No. 4 and was provided with notice that his financial accounts had been seized and frozen. On November 29, 2010, Senior Deputy Attorney General Ronald Thurner filed a petition for forfeiture and condemnation regarding the seized property. The petition was delivered by certified mail to Defendant and on December 7, 2010 Scott accepted delivery and signed the domestic return receipt. As to each of the counts in question, the Commonwealth presented evidence at trial that Defendant, with knowledge of the seizure, took specific action to liquidate the financial accounts in question. For example, on August 4, 2010, Defendant submitted

53RD
JUDICIAL
DISTRICT

LAWRENCE COUNTY
PENNSYLVANIA

17

two "Requests for Disbursement/Systematic Withdrawal" forms to OM Financial Life Insurance Company requesting full surrender of a cash surrender value of the account.

On January 3, 2010, Defendant submitted an "Annuity Distribution Request" for the Lincoln Financial Group requesting a total surrender of the policy.

On August 3, 2010, Defendant submitted a "Request for Withdrawal" form to Symetra Financial requesting a total withdrawal of the entire amount from the annuity account.

On October 1, 2012, an in camera motion hearing was conducted before the undersigned judge wherein the Court was advised by the Commonwealth that the Defendant was suspected of liquidating seized accounts. The Court scheduled a hearing on the motion for October 15, 2012. On the same day that this Court was advised of the suspected theft, Defendant issued a check for $150,000.00 to Blue Island LLC from his account at Fifth Third Bank that contained monies that had been transferred from constructively seized and frozen accounts.

On January 4, 2013, a search warrant and grand jury subpoena was served at Fifth Third Bank at Gulf Tower, Pittsburgh, Allegheny County, Pennsylvania for Defendant's account records. The records revealed that the account was empty and that recent activity included a cashier's check for $25,000.00 issued on August 30, 2012 to Defendant's medical expert for the criminal trial. The records also show the October 1, 2012 personal check written by Defendant to Blue Island LLC for $150,000.00 and a cashier's check to Sharon F.

Scott for $27,243.22 on October 10, 2012 that effectively emptied the account.

The Commonwealth evidence showed that Defendant's actions in liquidating seized and frozen accounts was intentional and knowing, and done after he had been served with notice that the accounts were seized and frozen. To the extent that the Defendant offered explanations suggesting that he did not understand that he was prohibited from having access to these monies, and therefore did not have the requisite intent, such evidence was for the jury to evaluate, and for the jury to accept or reject. As a matter of law, there was sufficient evidence of record for the jury to conclude that the Defendant acted with the requisite intent.

The offense of dealing and proceeds of unlawful activities in violation of §5111(a)(2) of the Crimes Code requires evidence that a person conducted a financial transaction with knowledge that the property involved represents the proceeds of unlawful activity and that the transactions designed in whole or in part to conceal or disguise the nature, location, source, ownership or control of the proceeds of unlawful activity. Ample evidence was presented that Defendant made large amounts of money by unlawfully dispensing controlled substance, and that the actions complained of relative to these proceeds constituted financial transactions, engaged in by liquidating the accounts in question and converting them to his own use, and that in so doing he concealed and disguised the nature, location, source, ownership and control of these proceeds. The evidence shows that he

93RD
JUDICIAL
DISTRICT

LAWRENCE COUNTY
PENNSYLVANIA

19

engaged in the financial tractions knowingly and intentionally, that he knew that he was dealing with assets that were frozen and forfeited, and he certainly knew that the assets represented proceeds of his unlawful activity as he himself engaged in this activity and controlled his own finances.

As to the offense of Tampering With/Fabricate Physical Evidence, in violation of §4910(1) of the Crimes Code, the elements are that (1) the Defendant knew that an official proceeding or investigation was pending or about to be instituted; (2) the Defendant altered, destroyed, concealed or removed an item; and (3) the Defendant did so with the intent to impair the verity or availability of the item to the proceeding or investigation. Commonwealth v. Yasipour, 957 A.2d 734 (Pa.Super. 2008), appeal denied 980 A.2d 111, 602 Pa. 658. Thus, in Commonwealth v. Neckerauer, 617 A.2d 421, 1281 Pa.Super. 255 (1992), evidence presented at a preliminary hearing was sufficient to establish a prima facie case that the Defendant unlawfully tampered with physical evidence, based upon his conduct in removing a motorhome that was the focus of a police investigation. It could be inferred from testimony presented that the defendant intended to conceal the motorhome and impair its availability in the police investigation. Here, the fact finder could infer that the Defendant intended to remove the proceeds of his illegal activities in order to conceal their whereabouts and impair the availability of these proceeds as they related to the criminal investigation and prosecution against him.

The offense of Obstructing the Administration of Law or Other Governmental Function, a violation of §5101 of the Crimes Code, occurs where a person intentionally obstructs, impairs or perverse the administration of law or other government function by any unlawful act. The facts of this case are very similar to Commonwealth v. Neckerauer, supra, where a prima facie case was established on evidence that the defendant took a motorhome to another state for storage after being informed that police were investigating the disappearance of a person believed to be using the motorhome. Here, as in Neckerauer, Defendant was engaged in concealing assets that were the focus of a police investigation and a part of a prosecution against him. The evidence presented show that he knowingly liquidated these assets, effectively removing them from the reach of the Commonwealth, thereby obstructing the Commonwealth's efforts to obtain the forfeiture of the same.

G. Denial of Defendant's Petition in the Interest of Justice by the Request for a Mistrial

In Paragraph G of Defendant's Concise Statement, Defendant alleges that the Court erred and abused its discretion in failing to grant Defendant-Appellant's post-trial motion for mistrial.

Following the guilty verdicts entered June 10, 2013, the Defendant filed a Petition in the Interest of Justice by the Request for a Mistrial. Defendant asserted that a mistrial was warranted due to allegations relative to Juror No. 12 who

allegedly should not have been seated as a juror. Defendant alleged that following the verdict, defense counsel received a call from Stanely T. Booker, Esq., a defense attorney practicing in Lawrence County and who is the ex-husband of Juror No. 12, Chastity Booker, who related that Juror No. 12 was not forthright in her answers to voir dire questions and that this was done in an effort to guarantee herself being chosen as a juror. It is further alleged that Juror No. 12 failed to stand and respond to the question "Do you or anyone close to you ever been charged with a crime, other than a traffic violation?"; that the juror has a brother with criminal history which she failed to disclose as well as him having a continuing addiction to opiates, in particular, Oxycodone, leaving the juror with a "profound negative opinion regarding prescribing prescription medication"; that the juror failed to stand and respond in the affirmative to the question: "Have you or anyone close to you ever worked in law enforcement of the justice system?" when her ex-husband is a criminal defense attorney who practices in Lawrence County; that the juror failed to stand and respond to the question "Do any of you know the Defendant, Van Edward Scott?"; that the juror had reason to know of Dr. Scott and issues surrounding Dr. Scott's prescribing practices based upon Attorney Booker's representation of the Defendant in the matter of Commonwealth v. Jeffrey Hogue, No. 562 of 2007, Cr.; and finally, that the juror has a built-in bias against prescription medication and the prescribing of said medication that is of such a personal nature that it can only be discussed in court to

protect the identity and sanctity of the outside parties involved. Defendant contends that had the juror been forthright and honest to any of the questions posed to her, the Defendant would have used a preemptory challenge which would certainly had been granted by the court.

Based upon the foregoing petition, the Court scheduled a hearing at which both Attorney Booker and the juror, Chastity Williams, testified. In addition, the notes of testimony of the voir dire proceedings relative to Juror No. 12 were transcribed. Following a hearing, the Court specifically found the following facts:

The notes of testimony of the voir dire proceedings established that Juror No. 12 specifically disclosed that her brother is a heroin addict; that he is in prison; that her ex-husband is a defense attorney; that her aunt is an attorney general; that she checked "yes" to Question No. 6 of the Juror Information Questionnaire which read 'Have you or anyone close to you ever been an eyewitness to a crime?' because he brother is a heroin addict and she had heard stories; that she can keep an open mind and that the aforesaid experiences in her life would not influence her vote in favor of the Commonwealth or the defense; that the fact that her brother is a heroin addict would not affect her ability to be a fair and impartial juror in the case. The Court further found that although the juror did not reveal that she had received a summary citation for retail theft approximately twenty years ago, the juror had never been arrested and the summary citation had been expunged causing her

53RD
JUDICIAL
DISTRICT

LAWRENCE COUNTY
PENNSYLVANIA

23

to believe that it was not required to be disclosed. The Court found that the juror honestly believed that she was not required to disclose a summary conviction and that if it had been disclosed it would not have provided a valid basis for challenge for cause.

The Court found based upon the testimony presented that the juror harbors no bias against prescription drugs or doctors that prescribe them and that the defense failed to prove that the juror had any prior knowledge of Defendant or his prescribing practices. The Court also found that the juror had no prior knowledge of trial witness Shawn Thompkins, an issue which was raised by the defense at the hearing.

In general, the Court found that the defense failed to prove a basis to challenge Juror No. 12 for cause or that she had otherwise failed to answer all of the questions put to her honestly and in a forthright manner and that there was no basis for a mistrial.

In its October 24, 2013 Order denying the petition, the Court found that the matter is governed by the standard set forth in McDonough Power Equipment Inc. v. Greenwood, 464 U.S. 548, 104 S.Ct. 845, 78 L.Ed.2d 663 (1984), such case holding that, in order to grant a new trial, the burden is on the defendant to demonstrate that the juror failed to answer honestly a material question on voir dire, and then further show that a correct response would have provided a valid basis for a challenge for cause. In McDonough, a products liability action resulted in a judgment entered upon a jury verdict for the

53RD
JUDICIAL
DISTRICT

LAWRENCE COUNTY
PENNSYLVANIA

24

plaintiff. Defendants moved for a new trial on the basis that a juror failed to respond affirmatively to a question on voir dire seeking to illicit information about previous injuries to members of the jurors' immediate family. During voir dire, prospective jurors were asked whether they or any members of their immediate families had sustained any severe injury due to an accident. Ronald Payton, who eventually became a juror, did not respond to the question. After trial, defendants filed a motion that asserted that information was received that Mr. Payton's son may have been injured at one time, a fact which had not been revealed during voir dire. Following the motion, an affidavit was produced by a Navy recruiter, which asserted that Mr. Payton's son had been injured in the explosion of a truck tire. Communication with Juror Payton revealed that his son had received a broken leg as the result of an exploding tire and that this accident had no effect on him as accidents are a part of life and he did not regard the broken leg as a severe injury.

In upholding the order of trial court which had denied relief, the Supreme Court noted that it has long held that a litigant "is entitled to a fair trial but not a perfect one, for there are no perfect trials." Brown v. United States, 411 U.S. 223, 231-232, 93 S.Ct. 1565, 1570-1571, 36 L.Ed.2d 208 (1973). The court further stated that a touchstone of a fair trial is an impartial trier of fact, "A jury capable and willing to decide the case solely on the evidence before it." Citing Smith v. Phillips, 455 U.S. 209, 217, 102 S.Ct. 940, 946, 71 L.Ed.2d 78 (1982). The Supreme Court further stated that a voir dire

examination serves to protect that right by exposing possible biases, both known and unknown, on the part of potential jurors; demonstrated bias in the responses to questions on voir dire may result in a juror being excused for cause; hints of bias not sufficient to warrant challenge for cause may assist parties in exercising their peremptory challenges. The necessity of truthful answer by prospective jurors if this process is to serve its purpose is obvious. In denying the defendant's requested relief, the Court held that to invalidate the result of a lengthy trial because of a juror's mistaken, though honest response to a question, is to insist on something closer to perfection than our judicial system can be expected to give. The Court stated that "it ill serves the important end of finality to wipe the slate clean simply to recreate the peremptory challenge process because counsel lacked an item of information which objectively he should have obtained from a juror on voir dire examination." The Supreme Court then went on the specifically hold as follows:

> We hold that to obtain a new trial in such a situation, a party must first demonstrate that a juror failed to answer honestly a material question on voir dire, and then further show that a correct response would have provided a valid basis for a challenge for cause. The motives for concealing information may vary, but only those reasons that affect a juror's impartiality can truly be said to affect the fairness of a trial.

McDonough, 464 U.S. at 556, 104 S.Ct. at 850.

Here, the proof at the hearing on the mistrial motion fell far short of the allegations made by the Defendant. The record of the voir dire proceeding clearly showed the juror had disclosed the information regarding the juror's brother being an

53RD
JUDICIAL
DISTRICT

LAWRENCE COUNTY
PENNSYLVANIA

26

addict, having been involved in the criminal justice system and having been addicted to heroin and that not only her ex-husband but also her aunt were attorneys. Virtually all of the matters raised by the Defendant were accurately addressed on the record with the juror and no evidence was presented as to her having any bias or impartiality regarding any issue in this case or any specific knowledge of Defendant or any witness. Thus, the Defendant failed to prove virtually all of his allegations relative to this juror.

The only arguable issue raised by the Defendant was that the juror did not disclose a summary citation for retail theft received approximately twenty years ago. However, the juror's explanation was adequate. She had never been arrested and the summary citation had been expunged causing her to believe that it was not required to be disclosed. The Court specifically found that this juror honestly believed that she was not required to disclose a summary conviction and that if it had been disclosed it would not have provided a valid basis for challenge for cause. Thus, the McDonough standard for a new trial in this circumstance was not met. Defendant has failed to prove that the juror failed to answer honestly a material question on voir dire. The expunged twenty-year-old citation was clearly not material to her ability to be impartial in this case. The juror felt that she had answered honestly because of the expungement and lack of arrest. Furthermore, a response that would have disclosed the summary citation would not have provided a valid basis for a challenge for cause.

53RD
JUDICIAL
DISTRICT

LAWRENCE COUNTY
PENNSYLVANIA

27

The Court here concludes that under the McDonough standard, Defendant is not entitled to a new trial based upon any information or lack of information given by Juror No. 12.